## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EWANG THEOPHILE EPIE-<br>ALOBWEDE,<br>PO Box 1250<br>Fort Belvoir, VA 22060<br><br>        Plaintiff,<br><br>v.<br><br>LLOYD AUSTIN,<br>in his official capacity as United States<br>Secretary of Defense,<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>CHRISTINE WORMUTH,<br>in her official capacity as United States<br>Secretary of the Army,<br>101 Army Pentagon<br>Washington, DC 20310-0101<br><br>and<br><br>PHYSICAL DISABILITY BOARD OF<br>REVIEW,<br>SAF/MRBD<br>3351 Celmers Lane<br>Joint Base Andrews  20762<br><br>        Defendants. | **COMPLAINT**<br><br>Case No. 21-CV-2466 |

## INTRODUCTION

1.      This is an action for declaratory and injunctive relief brought by Ewang Theophile ("Theo") Epie-Alobwede ("Plaintiff" or "Epie-Alobwede") against Lloyd Austin, in his official capacity as United States Secretary of Defense, the Physical Disability Board of Review ("PDBR"), and Christine Wormuth, in her official capacity as the United States Secretary of the Army (collectively, the "Defendants"). As discussed below, the

Defendants erred when they denied Plaintiff's application to the PDBR seeking disability retirement status and a combined disability rating of at least 30% for Plaintiff's medical disabilities. The PDBR decision was arbitrary, capricious, contrary to law, and unsupported by substantial evidence. Specifically, the PDBR ignored clear evidence that Epie-Alobwede's cumulative medical disabilities, including bi-lateral compartment syndrome in his legs, and pain and limited range of motion resulting from an improperly healed clavicle fracture, warranted a 40% disability rating, which would in turn entitle him to a medical retirement from the Army. The PDBR's error deprived Epie-Alobwede of a higher disability rating and thus the rights and privileges that flow from being designated as a military retiree.

2.    In January 2008, Congress enacted the Dignified Treatment of Wounded Warriors Act ("DTWA"), which established a new federal agency--the PDBR-- because military departments were not accurately and consistently assigning disability ratings under the VA Schedule for Rating Disabilities ("VASRD") (38 C.F.R. Part IV). At a 2007 joint congressional hearing held before enacting the DTWA, the Chairman of the Veterans' Disability Benefits Commission ("VDBC") cited a VDBC study which concluded that military departments frequently assigned lower disability ratings than the VA to the same service member, for the same medical conditions, under the same VASRD criteria. The Chairman further testified that it is "apparent that DoD has strong incentive to assign ratings less than 30% so that only separation pay is required and continuing family health care is not provided." During a Senate hearing concerning the DTWA, Senator Carl Levin acknowledged this ongoing problem and stated that "[t]he bill also establishes an independent board to review and, where appropriate, correct unjustifiably low Department of Defense disability ratings awarded since 2001."

3.      Before an Army service member can be evaluated by the PDBR, the service member must first undergo evaluation by the Medical Evaluation Board ("MEB"). If the MEB finds that the service member is unfit for military service, then the veteran is referred to the Physical Evaluation Board ("PEB"). The PEB then determines the disability rating for separating service members.

4.      Epie-Alobwede served our country faithfully from August 2001 until June 2005, when despite his desire to continue to serve, his medical conditions made that impossible.

5.      Despite a diagnosis of bilateral compartment syndrome in his legs and injuring both clavicles in a vehicle accident, Epie-Alobwede worked to continue his service in the Army. Ultimately, however, the resulting disabilities took their toll. The PEB found the Epie-Alobwede's medical conditions made him unfit for continued service and assigned a 10% disability rating for bilateral compartment syndrome under Diagnostic Code ("DC") 5399-5312, 38 C.F.R. § 4.73 (2005). Despite noting pain and limited range of motion, the PEB assigned a 0% disability rating to each fractured clavicle under DC 5099-5003, 38 C.F.R. § 4.71a (2005). Based on the PEB's findings, Epie-Alobwede was honorably medically separated from the Army on June 3, 2005 due to his disabilities. Less than two weeks later, on June 16, 2005, Epie-Alobwede had a comprehensive physical examination by the VA.

6.      The VA came to very different conclusions in assessing the appropriate disability rating of Epie-Alobwede's unfitting disabilities. In a January 31, 2006 rating decision, the VA rated 10% disability in each leg under DC 5399-5312 and 10% disability for each clavicle under DC 5201-5024, for a combined disability rating of 40%,

rather than 10% as determined by the PEB. Significantly, the 40% disability rating assessed by the VA would qualify Epie-Alobwede for medical retirement.

7.    In view of the substantially different disability ratings, Epie-Alobwede applied *pro se* to the PDBR to alter the PEB's 10% disability rating and change his status from medically separated to medically retired. The PDBR majority improperly applied the VASRD by ignoring not only evidence contradicting the PEB's findings, but also evidence supporting the VA's examination and disability ratings. The PDBR affirmed the PEB's 10% disability rating, thereby depriving Epie-Alobwede of medical retirement status.

8.    A minority opinion of the PDBR recommended awarding Epie-Alobwede a combined 30% disability rating (10% for the bilateral leg disability, 10% for the left clavicle, and 10% for the right clavicle), entitling Epie-Alobwede to medical retirement status.

9.    Epie-Alobwede now asks this Court to grant him relief by issuing an order concluding that the PDBR's decision was arbitrary and capricious and contrary to law, raising his disability rating to 40% consistent with his VA disability rating, and reclassifying his separation from the Army as a medical retirement.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case raises federal questions under the Administrative Procedure Act, 5 U.S.C. § 702 et seq. Plaintiff also seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

11.    Plaintiff seeks solely equitable relief in this action, namely, a finding that the PDBR's decision was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

12.     Plaintiff previously sought relief for this issue before the PDBR, which was denied.

13.     Review of the PDBR's decision is appropriate because the ruling was a final agency action for which there is no other adequate remedy in a court. *See* 28 U.S.C. § 704.

14.     Venue in this Court is proper under 28 U.S.C. § 1391(e)(l) because Defendants reside in this judicial district. Venue is also proper under 5 U.S.C. § 703 because this is a Court of competent jurisdiction.

15.     In accordance with 28 U.S.C. § 2501, this action is brought within six years of the PDBR's decision denying relief.

## **PARTIES**

16.     Plaintiff Theo Epie-Alobwede is a citizen of the United States, a veteran of the United States Army, and a resident of Fort Belvoir, Virginia.

17.     Defendant Lloyd J. Austin is the United States Secretary of Defense. He is the chief officer of the Department of Defense, and exercises authority, direction and control over the Department of Defense. Upon information and belief, Defendant Austin performs a significant amount of his official duties within this judicial district.

18.     Defendant PDBR is a joint service review board. The PDBR is located at Joint Base Andrews in Maryland.

19.     Defendant Christine Wormuth is the United States Secretary of the Army. She is the chief officer of the Department of the Army, and exercises authority, direction and control over the Army. Upon information and belief, Defendant Wormuth performs a significant amount of her official duties within this judicial district.

## FACTUAL ALLEGATIONS

### Epie-Alobwede's Military Service

20.     Epie-Alobwede served in the United States Army as a Health Care Specialist from August 2001 to June 2005. The Army awarded Plaintiff a Combat Medical Badge, an Army Achievement Medal, a National Defense Service Medal, a Global War on Terrorism Expeditionary Medal, a Global War on Terrorism Service Medal, an Army Service Ribbon, and a Parachutist Badge.

21.     Epie-Alobwede first experienced pain in his lower extremities during Advanced Individual Training in 2001 and was subsequently diagnosed with shin splints. He continued to suffer leg pain during Airborne School in May 2002, leading to a further diagnosis of compartment syndrome in both lower extremities. The American Academy of Orthopedic Surgeons describes compartment syndrome as "a painful condition that occurs when pressure within the muscles builds to dangerous levels. This pressure can decrease blood flow, which prevents nourishment and oxygen from reaching nerve and muscle cells." *See* https://orthoinfo.aaos.org/en/diseases--conditions/compartment-syndrome/.

22.     On February 21, 2003, while serving in Padova, Italy, Epie-Alobwede was a passenger in a motor vehicle driven by a fellow soldier that was involved in a serious accident.

23.     Epie-Alobwede was immediately admitted to the Padova City Hospital with head trauma and fractures of his right and left clavicles. He was unconscious for four (4) days. Doctors applied a "figure of eight bandage" to both of his clavicles. An MRI performed on March 19, 2003 noted abnormality in the clavicles from the fractures. After several months of healing, a follow-up MRI on October 21, 2003 deemed his shoulder to be "normal."

24.     Thereafter, Epie-Alobwede deployed to Iraq from October 28, 2003 to March 3, 2004 as a Combat Medic. On combat patrol missions, he encountered mines, IEDs, and hostile incoming fire and engaged in battle, discharging his weapon at the enemy and witnessing casualties.

25.     Epie-Alobwede returned to Italy following this deployment to Iraq and was provided physical therapy for his shoulders from April to June 2004, to treat his reported shoulder pain. For example, a DA 4700 – Medical Record – Supplemental Medical Data form dated April 30, 2004, indicates "'tight' discomfort bilat shoulder, with intermittent left scapular pain" and acknowledges a reduced range of motion noting "slowly improving bilat Shoulder ROM, strength and function s/p bilat clavicle and left scapular fractures." Similarly, a Physical Profile dated May 18, 2004 notes bilateral shoulder pain, bilateral leg pain and provided the following restrictions: "No overhead lifting, reaching or throwing activities. No heavy or repetitive lifting, pushing, pulling or carrying with the right arm. No running at this time."

26.     Given his ongoing leg and clavicle injuries, the Army placed Epie-Alobwede on repeated temporary profile restrictions on his activities due to bilateral shoulder and leg pain. For example, the June 16, 2004 profile prohibited both lifting over 5 pounds and marching, allowing him only to walk and run at his own pace and distance. Despite continued treatment and restrictions on activities, he continued to suffer bilateral shoulder and leg pain, and he was referred into the Army's Physical Disability Evaluation System ("DES").

**The Army Physical Disability Evaluation System ("DES")**

27.     When a military department determines that a member of the U.S. Armed Forces has one or more disabilities that make the member unfit for continued military

service, he or she is normally separated from service with either (1) medical separation or (2) medical retirement. This determination turns on the combined disability rating assigned by the military department to the conditions that render the service member unfit for continued service. In assigning disability ratings, military departments are required by statute to apply the VASRD. If the military department assigns the service member a combined disability rating of 20% or less, the service member is medically separated. If the military department assigns the service member a combined disability rating of 30% or more, the service member is medically retired.

28.     Chapter 61 of Title 10 of the United States Code establishes the process through which the Army discharges disabled service members. It authorizes a Physical Evaluation Board to discharge military personnel who are found to be unfit for continued military service due to physical or mental disability.

29.     The process begins with the Medical Evaluation Board ("MEB"). The decision to begin proceedings before the MEB rests entirely with the Army. A service member may not refer himself to the MEB. The purpose of the MEB is to document a service member's medical status and duty limitations and determine whether he or she meets the Army's retention standards. The MEB evaluates the service member through a series of examinations. If the MEB determines that the service member has one or more physical or mental conditions that fall below retention standards, it refers the service member to a PEB for a fitness determination.

30.     The PEB is responsible for determining a service member's unfitness for duty as a result of a physical or mental disability. The PEB can find unfitness only when a disability rises to the level of interrupting a service member's career. If the PEB finds a service member is unfit for duty, then it must assign a percentage disability rating from 0%

to 100%, in increments of 10%, for each condition under the VASRD. The PEB's disability rating controls the amount of military benefits and services to which the service member is entitled upon discharge.

### Epie-Alobwede's Medical Conditions

31.     A Physical Profile dated February 9, 2005 notes a number of physical limitations, including "NO RUN, JUMP, ROAD MARCH, PUSH-UP, ROPE CLIMBING, AIRBORNE OPERATIONS." This Physical Profile also limited Epie-Alobwede's lifting to a maximum of 20 pounds. On February 11, 2005, a Form 2808 Report of Medical Examination indicated Mr. Epi-Alobwede suffered from leg and clavicle pain.

32.     On February 14, 2005, Epie-Alobwede's Commander stated that "due to the numerous fractures in his upper body and the compartment syndrome in his legs," the veteran was unable to perform "basic soldier tasks."

33.     As part of the DES process, on February 16, 2005, the MEB issued a Narrative Summary ("NARSUM"). The NARSUM notes that Epie-Alobwede "always has some pain of his lower legs which he estimates 6 out of 10 intensity. The pain worsens with running, sit-ups, jumping, or walking…" In addition, the NARSUM indicated that "he still has pain depending on his physical activity level," and "extensive physical therapy" provided "minimal relief or improvement." A physical examination further noted "diffuse tenderness distal ½ lower leg" in both the right and left legs.

34.     The NARSUM further notes that exercise-induced compartment syndrome was suspected and confirmed with "post-exercise compartment pressure measurements of lower legs were abnormally elevated on 7 January 2005."

35.     With respect to Epie-Alobwede's clavicles, the MEB examination found range of motion loss for his shoulders, with abduction in the shoulders to 170 degrees

when normal range of motion is to 180 degrees. The examination further revealed diffuse tenderness in the right side of sternum to palpation and mild prominence in the right sterno-clavicular joint. In short, the NARSUM reflects both a limited range of motion and pain related to Epie-Alobwede's clavicle injuries. Indeed, the NARSUM includes an express diagnosis of "post traumatic pain of bilateral clavicles, right sterno-clavicular joint, left scapula, and right side of sternum." The NARSUM noted that the veteran's physical profile was updated to reflect impairment in the upper extremities (U3) and lower extremities (L3) as the veteran was precluded from running, jumping, rucksack marching, airborne operations, performing push-ups and pull-ups, and from wearing individual body armor.

36.     Ultimately, the MEB concluded that Epie-Alobwede failed medical retention standards for compartment syndrome in his bilateral lower legs, left hip snapping syndrome, and for post-traumatic pain of bilateral clavicles. The NARSUM stated: "It is unlikely that his present symptoms will fully resolve in a military environment." Accordingly, he was referred to the next stage in the DES process, the PEB.

### The Physical Evaluation Board's Decision

37.     On March 17, 2005, the PEB found his bilateral leg condition and bilateral clavicle condition to be unfitting. The PEB rated the bilateral leg condition under Diagnostic Code (DC) 5399-5312 for foot and leg function, assigning a 10% rating for a moderate condition. 38 C.F.R. § 4.73 (2005). The PEB rated the bilateral clavicle condition under DC 5099-5003, 38 C.F.R. § 4.71a for degenerative arthritis. The PEB assigned a 0% rating for his clavicle condition, finding that he had abduction to 170 degrees. The PEB noted that both conditions caused "pain."

38.     On May 5, 2005, the PEB issued its decision to grant Epie-Alobwede a combined disability rating of 10% and separation with severance pay.

**Epie-Alobwede's VA Rating Decision**

39.     Within two weeks of discharge, on June 16, 2005, Epie-Alobwede attended a VA examination. The VA examiner chronicled Epie-Alowede's previous medical history and described Epie-Alowede's disabilities in more detail than the MEB examination. After conducting a physical examination, the VA indicated that Epie-Alowede had weakness of the left side compared to the right side. The VA exam concluded that both legs experienced "left and right dorsiflexion limited secondary to pain" and confirmed the diagnosis of compartment syndrome of both legs. For the bilateral clavicle injury, the exam found that range of motion was limited due to pain for abduction over 90 degrees.

40.     On January 30, 2006, the VA issued its Rating Decision and awarded Epie-Alobwede a 40% total rating consisting of a combined rating of 20% for his leg conditions (10% for the right leg and 10% for the left leg) and 10% for each clavicle fracture effective back to the date of discharge. The decision indicates that the VA exam "found limited and painful motion in each ankle and hip." The VA assigned a 10% rating under DC 5399-5312 for "moderate muscle disability" in each leg. In contrast, the PEB assigned a combined total rating of only 10% for his bilateral leg condition. Further, the VA rating decision noted that the VA exam "found mildly limited motion with pain" in each shoulder, assigning a 10% rating for the right clavicle fracture residuals and a separate 10% rating for the left clavicle fracture residuals. In contrast, despite a long established history of reported shoulder pain, the PEB rated these clavicle disabilities at 0%.

**Physical Disability Board of Review's Arbitrary and Capricious Decision**

41.     Given the discrepancy between his PEB and VA ratings, Epie-Alobwede applied *pro se* to the PDBR for review of the PEB decision.

42.     On May 30, 2018, the PDBR denied his application.

43.     The PDBR decision assigned a 0% rating for Mr. Epie-Alobwede's clavicle condition, asserting that "Painful motion was typically not recorded." In reaching this erroneous conclusion, the PDBR ignored a long history of documented shoulder pain and erroneously concluded that the VA exam finding limited range of motion and pain was an "outlier." In reaching this conclusion, the PDBR erroneously discounted the VA's exam dedicated to his shoulder condition that thoroughly documented his range of motion loss and pain, and, instead, relied on two different exams in which Epie-Alobwede's visits were addressing different and unrelated medical conditions, i.e., a scalp infection and malaria medication, which would not address the limited range of motion and pain exhibited in Mr. Epie-Alobwede's clavicles. Further, the PDBR's decision acknowledges that the PEB's physical examination took place four months before separation, whereas the VA examination occurred within two weeks of separation. Thus, the VA examination is more reflective of Mr. Epie-Alobwede's condition at the time of separation and should have been afforded greater weight.

44.     With respect to Mr. Epie-Alobwede's leg conditions, the PDBR stated that even though the referred condition was bilateral compartment syndrome for both legs, "most encounters were for the right leg rather than both." Despite acknowledging pain existed in both legs regardless of frequency of "encounters," the PDBR assigned a 10% rating for the right leg and a 0% rating for the left leg. In reaching this conclusion, the PDBR ignored substantial evidence found in Epie-Alobwede's medical records and in the conclusions made by the MEB and PEB. For example, Mr. Epie Alowede's medical records indicate the MEB found that the condition of "induced compartment syndrome, bilateral lower legs" failed medical retention noting that he was "most bothered by chronic pain of both legs." Similarly, the PEB found the condition of "bilateral leg pain" generally to be

unfitting. Further, the VA rating decision found the right and left leg conditions to be identical, stating that, for the left leg, "[p]lease read the reasons under the right leg. . . ."

45.     The PDBR's decision also reflects improper reliance on irrelevant factors which are not mandated by the VASRD to lower the disability rating. For example, the majority points to a December 6, 2005 medical examination, six months after separation, that Epie-Alobwede underwent in connection with civilian employment and states that "[h]e was noted to have a normal pre-employment physical examination and no contraindications to work were present." The ability to perform a civilian job, such as a desk job which may have little physical demands, is simply not relevant to the nature or severity of Epie-Alobwede's level of disability or the VASRD rating scheme.

46.     The PDBR's decision included a dissenting minority opinion that disagreed with the majority finding regarding the clavicle conditions. The minority opinion was persuaded by the VA exam that Epie-Alobwede experienced painful motion and had limited range of motion in both shoulders. The minority opinion reasoned that VASRD, 38 C.F.R. § 4.59 requires the minimum compensable rating for painful joints due to healed injury. Accordingly, the minority opinion would have conferred a 10% rating for each clavicle condition, and when combined with the PEB's 10% rating for bilateral leg pain, would result in a total 30% rating and a medical retirement.

## COUNT I - VIOLATION OF ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706(2)(A))

47.     Plaintiff incorporates the allegations in paragraphs 1 through 45 above.

48.     The PDBR acted arbitrarily and capriciously by affirming the flawed decision of the PEB and relying on irrelevant facts to support its decision that the MEB's examination was more probative of Epie-Alobwede's clavicle injury at separation than the

VA's Rating Decision and examination. The PDBR erroneously viewed Epie-Alobwede's VA's disability rating and examination of his clavicles to be an "outlier" when previous examinations relied upon by the majority likely never conducted range of motion measurements because one was a visit to address a scalp infection and the other addressed malaria medication.

49.     The PDBR acted contrary to law because it failed to assign a 10% rating for Epie-Alobwede's left clavicle disability and a 10% rating for his right clavicle disability in violation of 38 C.F.R. § 4.59, which requires the minimum compensable rating for painful joints due to healed injury. Ample evidence exists in the record noting pain in both clavicles that would require a minimum disability rating of 10% under 38 C.F.R. § 4.59.

50.     The PDBR acted contrary to law when it failed to apply the higher of two evaluations when the disability picture more nearly approximates the criteria for the higher rating in violation of 38 C.F.R. § 4.7. The PDBR failed to assign separate 10% ratings for Epie-Alobwede's unfitting clavicle disability as opposed to a 0% rating although evidence of range of motion loss and/or pain from just two weeks post discharge was sufficient to establish 10% ratings for each clavicle.

51.     The PDBR acted contrary to law when it failed to resolve any reasonable doubt regarding the degree of disability in favor of Epie-Alobwede in violation of 38 C.F.R. § 4.3. *See also* 38 C.F.R. § 3.102.

52.     The PDBR further acted arbitrarily and capriciously by ignoring a long history of medical evidence of pain *in both legs* when it concluded that "most encounters were for the right leg rather than both" and assigned a 0% rating to Epie-Alobwede's compartment syndrome in his left leg despite admitting pain existed in the left leg.

14

53.     Epie-Alobwede has suffered a legal wrong resulting from the PDBR's arbitrary and capricious decisions because he was deprived of his right to a meaningful review from the PDBR. The PDBR's fallacious decision caused Epie-Alobwede to remain with the stigma of medical separation from the Army and deprived Epie-Alobwede of a medical retirement discharge status that is warranted by both his serious service-connected disability and his honorable service to the Army.

54.     The PDBR exists to correct injustices by ensuring "the accuracy and fairness of combined disability ratings." Department of Defense Instruction 6040.44. The PDBR failed to meet that mission here. Only awarding Epie-Alobwede medical retirement status would correct the injustice caused by the PDBR's arbitrary and capricious decision of approving the PEB's earlier determination.

## PRAYER FOR RELIEF

Theo Epie-Alobwede respectfully requests that this Court enter judgment against the Defendants and award the following relief:

a.     Find that the PDBR's determination, and the Army's decision to adopt the PDBR's determination, were arbitrary and capricious, unsupported by substantial evidence, and contrary to law;

b.     Amend Epie-Alobwede's Army records to reflect a disability rating to 40%, reflecting 10% disability in each lower leg and 10% disability for each clavicle;

c.     Amend Epie-Alobwede Army records-including without limitation his DD Form 214 and his retirement orders--to reflect a permanent medical retirement;

d.     Declare, under the Declaratory Judgment Act, that the PDBR has violated the Administrative Procedure Act.

e.     Award Plaintiff costs and attorneys' fees; and

     f.      Grant any other relief the Court deems proper.

Dated: September 21, 2021               Respectfully submitted,

                                 */s/ Kevin E. Gaunt*
                                 Kevin E. Gaunt
                                 Hunton Andrews Kurth LLP
                                 2200 Pennsylvania Avenue NW
                                 Washington, DC 20037
                                 Telephone: (202) 955-1500
                                 E-mail: kgaunt@huntonak.com
                                 DC Bar: 1008697

                                 Paul Ackerman
                                 Hunton Andrews Kurth LLP
                                 200 Park Avenue
                                 New York, NY 10166
                                 Telephone: (212) 850-2858
                                 E-mail: paulackerman@huntonak.com

                                 Michael R. Horne
                                 Hunton Andrews Kurth LLP
                                 1445 Ross Avenue, Ste. 3700
                                 Dallas, TX 75202
                                 Telephone: (214) 979-2931
                                 E-mail: mhorne@huntonak.com

                                 David M. Sonenshine
                                 Barton F. Stichman
                                 Rochelle Bobroff
                                 Esther Leibfarth
                                 National Veterans Legal Services Program
                                 1600 K Street, NW, Suite 500
                                 Washington, DC 20006-2833
                                 Telephone: (202) 621-5681
                                 E-mail: david@nvlsp.org

                                 *Counsel for Plaintiff*